[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
This action essentially is to quiet title to certain real property in Naugatuck. It has a somewhat convoluted history and a timetable as to various events is essential.
Mary Rose was the owner of certain real estate. On May 23, 1984 she accepted an offer from the plaintiff to purchase from her a portion of that realty. In the offer the subject property is described as "Land of Mary Rose (Block E-7) Horton Hill, Naugatuck (680' on Horton Hill) More or less 9 Acres." The agreement called for a closing on or before August 30, 1984. It was recorded on the Naugatuck Land Records on December 6, 1984.
Mary Rose refused to perform and an action for specific performance was brought against her by the plaintiff and was served on May 17, 1985. Attached to the complaint was a description of a rectangular piece having a frontage easterly on Horton Hill Road of 170 feet, a depth of 180 feet, bounded southerly on a third party, and westerly and northerly on remaining land of Mary Rose. A Lis Pendens using that description was filed with the Naugatuck Town Clerk on the day of service.
That earlier action, #072663, Waterbury, came on for hearing on October 25, 1985, at which time the plaintiff filed an amended description being the offer to purchase of May 23, 1984. Present at that hearing was the defendant Juanita Solomon. Ms. Solomon was a close friend and confidant of Mary Rose and knew that the action concerned a dispute as to land on Horton Hill Road. CT Page 8224
By Quit Claim Deed, reciting no consideration, dated and recorded July 15, 1987, Mary Rose purported to convey to Juanita Solomon a parcel bounded easterly 250 feet on Horton Hill Road, southerly 275 feet on the same third party and westerly and northerly on other land of Mary Rose. This description included the parcel described in the Lis Pendens of May 17, 1985. Mary Rose told Juanita Solomon that she preferred giving the parcel to her rather than selling it to the plaintiff. Both Mary Rose and Juanita Solomon selected a lawyer who had no connection with or knowledge of the litigation and neither revealed that the deed has been given.
On November 27, 1987 Juanita Solomon mortgaged the piece quit claimed to her to Naugatuck Savings Bank for $10,000. The description used was identical to that in her quit claim deed, despite the recorded lis pendens which covered a substantial portion of that land.
During the pendency of the earlier litigation there was considerable activity between the parties. The plaintiff wished to obtain the property to subdivide and develop it. With permission of Mary Rose the plaintiff caused a survey of the entire tract to be made, which is dated July 16, 1987. With her knowledge and permission a subdivision application was processed before the Planning Commission and approval was obtained on September 21, 1987. The agreed price was increased to $50,000.
On December 1, 1987, the parties to the earlier action entered into a stipulation for judgment for the plaintiff and a judgment in accordance with that stipulation was entered on December 3, 1987. Attached to the stipulation was a description of a parcel having a frontage on Horton Hill Road of 675 feet and which included the parcel in the May 17, 1985 Lis Pendens, land in the deed from Mary Rose to Juanita Solomon of July 15, 1987, and in addition substantial acreage. That description is reasonably consistent with Block E-7 on the Tax Assessor's map of the area. The frontage on Horton Hill Road closely approximates the frontage in the offer to purchase of May 23, 1984. The big discrepancy is that the parcel described contains only about half the acreage noted in the offer. The stipulation was recorded on the land records on December 7, 1987. A judgment lien using the same description as that in the stipulation was recorded on February 2, 1988. The stipulated judgment did provide that the recording of a certified copy of the judgment on the Naugatuck Land Records was sufficient to transfer title to the plaintiff. A closing was held on February 19, 1988 at a gross price of $50,000 subject to customary adjustments. On that same day, Henry S. Marlor, Jr. was appointed conservator of the estate of Mary Rose and the net proceeds of sale were paid to him. CT Page 8225
By deed dated October 25, 1990, recorded December 21, 1990, the plaintiff granted a mortgage to Leonard F. Casella 
Associates, its attorneys, and the description set forth in that mortgage included not only the entire tract which was the subject of the earlier litigation, but also additional land of Mary Rose which is not the subject of either lawsuit. By deed dated May 13, 1991, recorded May 20, 1991, the plaintiff conveyed the tract described in the stipulated judgment and in the judgment lien to Stephen J. Duffy, Trustee. That deed makes no reference to the mortgage of October 25, 1990. In form it is a warranty deed but testimony at trial suggests that in fact it is a mortgage. What it really is is academic as Duffy is not a party to these proceedings and cannot be affected by any determination made here.
I have no difficulty in concluding that by quit claiming a portion of the subject property to Juanita Solomon that Mary Rose committed a fraud upon the plaintiff. She had accepted an offer by the plaintiff to purchase from her the entire tract. She then reneged on that agreement. During the pendency of the earlier action, and while active negotiations were under way, she attempted to make it impossible for her to perform what she was duty bound to do. She concealed that attempted transfer from her own attorneys while they were obtaining an increase in the sales price. She had declared from the stand at the hearing on October 25, 1985 that she would give the property to Juanita Solomon rather than sell it to the plaintiff. A notation by the court on the folder of the earlier file states that the case was reported settled on August 6, 1987 and the delay in stipulating for judgment resulted from the necessity of obtaining subdivision approval from the Planning Commission and obtaining a surveyor's description of the tract. The increase in price had been agreed to by about September 15, 1986.
In similar fashion I have no problem in concluding that Juanita Solomon actively participated in that fraud. Mary Rose had pointed out to her land that she owned including that which was the subject of the contract. She was present at the hearing on October 25, 1985 when Mary Rose testified that she would give the land to her, pointing to her, rather than sell it to the plaintiff. Mary Rose offered to transfer the entire tract to her and only attempted to convey a lesser amount because of her insistence that she did not want all of it. She accepted a limitation imposed by Mary Rose that she was not to sell the land. I find her protests that she did not know what was involved in the first action to be incredible. She knew that the plaintiff was trying to take the land from Mary Rose and that Mary Rose stated she would give it to her first. The deed to her recites no consideration and she confirmed this in sworn testimony. The only thing she has done with the land since the date of the quit claim CT Page 8226 deed is to place a mortgage on it. This did not change her position for the worse because she received the proceeds of the loan.
The position of the Naugatuck Savings Bank is not quite as clear. It was entitled to rely upon the land records.
 If one purchases land with notice of an equitable right or claim of a third person affecting the subject-matter of the purchase, or if the purchaser had notice, actual or constructive, of facts which are sufficient to put a prudent man upon inquiry which, if prosecuted with reasonable diligence, would certainly lead to discovery of a conflicting claim, equity regards him as standing, as to such third person, in the place of the grantor and as purchasing subject to such charges or claims. (citations omitted)
 Since it is presumed that no person will purchase land without examining the condition of the record as to the title thereto, all persons are charged with notice as to what the record discloses. Lengyel v. Peregrin, 104 Conn. 285, 288-189.
The record did disclose the offer to purchase dated May 23, 1984, recorded December 6, 1984. Admittedly the description in that offer leaves much to be desired, but any competent examiner would recognize the reference to "Block E-7" as pertaining to the assessor's map which indicated a nine acre parcel. The record also disclosed the lis pendens describing a 170 by 180 foot piece which was included in the 250 by 275 foot piece described in both the quit claim deed and the mortgage. It also identified the first action and the most cursory review of that file would reveal that the description in the lis pendens was inaccurate. This certainly should have caused the alarm bells to ring. Beyond any question the bank's mortgage is subordinate to the rights of the plaintiff in the 170 by 180 foot piece, and the bank concedes this.
The recorded offer to purchase specified a closing on or before August 30, 1984 and if nothing else appeared on the land records this might well cause an examiner to conclude that it was stale and no longer in effect by November 27, 1987, but if so, it made no sense to record that offer on December 6, 1984, more than CT Page 8227 three months after the stated time for performance. Further, the recording of the lis pendens on May 17, 1985, even though the description was erroneous, gave ample notice that there was pending litigation between the plaintiff and Mary Rose concerning land in this area. I conclude that these are "facts which are sufficient to put a prudent man upon inquiry which, if prosecuted with reasonable diligence, would lead to discovery of a conflicting claim". With those red flags flying and alarm bells ringing, the bank must be charged with constructive notice of the superior claim of the plaintiff. This does not suborn the statutory requirements of a lis pendens. Lengyel v. Peregrin, cited above, provides for a much broader basis for inquiry, and such inquiry would have revealed that Juanita Solomon did not have marketable title.
Therefore, I conclude that, as of May 13, 1991, the date of the deed to Stephen J. Duffy, Trustee, the plaintiff had title free and clear of any interest by Mary Rose, Juanita Solomon and Naugatuck Savings Bank, to:
All that certain piece or parcel of land situated in the Town of Naugatuck, County of New Haven, and State of Connecticut, beginning at a point in the westerly line of Horton Hill Road, said point being the northeasterly corner of land now or formerly of Ruth Arnatavicius and is the southeasterly corner of the herein described parcel of land; thence running westerly along the northerly line of land now or formerly of Ruth Arnatavicius along two courses, 208 feet more or less and 146.85 feet; thence westerly along land now or formerly of the Connecticut Water Company, 231.43 feet more or less; thence northerly along land now or formerly of Jack Assuncao, 362.00 thence westerly along land of said Assuncao, 50.00 feet; thence northerly along other land of Mary Rose, 510 feet more or less; thence easterly perpendicular to Horton Hill Road, 35 feet more or less; thence southerly along Horton Hill Road, 675 feet to the point or place of beginning, bounded:
Northerly — by other land of Mary Rose
Easterly — by Horton Hill Road
Southeasterly — by land now or formerly of Ruth Arnatavicis
Southerly — by land now or formerly of the Connecticut Water Company and by land now or formerly of Jack Assuncao
Westerly — by land now or formerly of Jack Assuncao and by other land of Mary Rose.
In addition, the plaintiff seeks money damages from Mary Rose CT Page 8228 and Juanita Solomon. If the deed to Juanita Solomon were to stand, it could obtain many fewer lots by subdividing the remnant than it could obtain from the entire tract. With the interest of both Ms. Solomon and the bank voided that is no longer the case; damages on that account are not a factor. Its expenses in connection with subdividing the land are something it would have faced in any event so they are not factors. As I am voiding the mortgage to Naugatuck Savings Bank, the balance to it has nothing to do with the case. In its brief, the plaintiff asserts there are unpaid taxes but I do not recall any evidence having been presented as to that matter. I feel it is entitled to interest on that portion of the $50,000 paid at the closing on February 19, 1988 attributable to that portion of the tract title to which was clouded by the quit claim deed, that being approximately 50%, at the legal rate, from the date of closing to the date of judgment, which approximates $10,350. Insofar as the actions of both Mary Rose and Juanita Solomon were intentional, wanton and malicious, it is entitled to a reasonable attorney's fee, but I must temper that by the realization that these same attorneys are responsible for the erroneous lis pendens which they prepared. If a proper lis pendens had been filed, this action would not have been necessary. Therefore I limit the award for that item to $4,000.
In accordance with the above, title to the herein described property is quieted in the plaintiff against all defendants and money damages are awarded to it against Mary Rose and Juanita Solomon, jointly and severally, in the amount of $4,000, and against Mary Rose and her estate in the amount of $10,350, costs to be taxed.
J. HEALEY, STATE TRIAL REFEREE